# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John J. Hurry, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Financial Industry Regulatory Authority Incorporated, et al., <br><br> Defendants. | No. CV-14-02490-PHX-ROS <br><br> **ORDER** |

In granting the previous motion to dismiss, the Court granted Plaintiffs leave to amend certain claims. Plaintiffs filed an amended complaint but the amended complaint suffers from many of the same defects as the original. Therefore, as set forth below, most of the claims will be dismissed without leave to amend.

## BACKGROUND

The Court's prior order recounts the background of this litigation in substantial detail. (Doc. 68). In brief, John and Justine Hurry own or operate numerous businesses, including Scottsdale Capital Advisors Corporation ("SCA"). The Financial Industry Regulatory Authority ("FINRA") regulates "all securities firms that do business with the public." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 737 (9th Cir. 2013). Because SCA is a securities firm doing business with the public, FINRA has regulatory authority over SCA. In 2012, employees of FINRA conducted a surprise inspection of SCA's headquarters. During that inspection, FINRA seized numerous computers. The

Hurrys and FINRA disagreed on the legality of that seizure as well as the legality of FINRA accessing any information contained on the computers.

Shortly after the seizure of the computers, FINRA began a campaign of "escalating harassment" against the Hurrys. (Doc. 71 at 29). That campaign allegedly included FINRA inducing the Nevada Secretary of State's Securities Division to initiate an investigation of "businesses associated with the Hurrys." (Doc. 71 at 31). The campaign also included "leak[ing] non-public, confidential, and false and misleading information to a reporter for the Deal Pipeline, a financial news and information service." (Doc. 71 at 36-37). That leaked information allegedly led third parties, such as J.P. Morgan Private Bank, to terminate their contractual relationships with the Hurrys. (Doc. 71 at 45).

In November 2014, the Hurrys and close to thirty of their companies (collectively, "Plaintiffs") filed this suit against FINRA and Scott Andersen, FINRA's then-Deputy Regional Chief Counsel. (Doc. 1 at 8). The complaint included fourteen claims, apparently brought by every plaintiff against both defendants. FINRA and Andersen filed a motion to dismiss which prompted voluminous briefing, including supplemental briefing ordered by the Court. On August 5, 2015, the Court rejected the portion of the motion to dismiss arguing federal jurisdiction did not exist, but the Court dismissed all fourteen claims based on a variety of legal and factual theories. The Court granted leave to amend certain claims but denied leave to amend others. Plaintiffs opted to amend their complaint but, strangely, the amended complaint included the claims on which leave to amend was not granted. FINRA and Andersen filed another motion to dismiss which Plaintiffs oppose.

**I. Claims Dismissed With Prejudice**

In its prior order, the Court dismissed without leave to amend the claims for "prima facie tort," violation of the Privacy Act, and conspiracy. (Doc. 68). Plaintiffs included these same claims in the amended complaint, explaining these claims were "re-pled to preserve them for eventual appellate review." (Doc. 76 at 3). In support of this

statement, Plaintiffs cite footnote fourteen in *Chubb Custom Insurance Co. v. Space Systems/Loral, Inc.*, 710 F.3d 946, 973 (9th Cir. 2013). That footnote explains a claim is waived if it is not renewed after a district court dismisses the claim "with *leave to amend.*" *Id.* As made clear by the case cited in that same footnote, a plaintiff need not replead claims that are dismissed without leave to amend. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012). Thus, Plaintiffs did not need to replead these three claims to preserve them for appellate review. In any event, the three claims fail for the reasons outlined in the Court's earlier order and will be dismissed again.

## II. Claims Barred by Absolute Immunity

The prior order also dismissed numerous claims because they were based on an exercise of FINRA's regulatory behavior. As previously explained, "FINRA has [absolute] immunity when acting in an adjudicatory, prosecutorial, arbitrative or regulatory capacity." (Doc. 68 at 7). Thus, any actions "taken under the aegis of" FINRA's regulatory authority cannot serve as the basis for liability. (Doc. 68 at 7) (*quoting P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999)). The factual allegations in the earlier complaint meant all aspects of Claims I, II, III, IV, V, VI, XIII, as well as a portion of Claim IX, were barred by absolute immunity. In reaching this conclusion, the Court noted it was unlikely Plaintiffs would be able to amend these claims to avoid the absolute immunity bar. But the Court granted Plaintiffs leave to allege additional facts establishing the actions at issue were "outside an exercise of [Defendants'] regulatory authority." (Doc. 68 at 15).

In amending their complaint, Plaintiffs did not make any meaningful changes to the claims previously found barred by absolute immunity.[1] The claims still depend on the seizure of certain computers or statements made by Defendants during their investigation of SCA. Because those actions were, under Plaintiffs' own allegations, taken by Defendants in their regulatory capacity, Defendants are entitled to absolute

---

[1] As noted by a footnote in the Court's prior order, there are substantial questions whether the Ninth Circuit's formulation of FINRA's immunity is correct. (Doc. 68 at 8 n.5). But arguments for changing Ninth Circuit law must be made to the Ninth Circuit.

immunity.[2] Having had one opportunity to amend these claims, and failing to make any meaningful changes, these claims will be dismissed without leave to amend.

**III. Claims IX, X, XI, and XII**

After dismissing the claims that were dismissed without leave to amend, as well as the claims which are still barred by absolute immunity, there are only four claims left. Those claims are a portion of Claim IX for defamation, Claim X for intentional interference with contractual relations, Claim XI for public disclosure of private facts, and Claim XII for false light. Two of these claims can be dismissed while the other two cannot.

**A. Claims X and XI**

Claim X for intentional interference with contractual relations was dismissed because the original complaint did not allege sufficient facts showing Defendants' alleged statements to the reporter were, in fact, the cause of other companies terminating their relationships with Plaintiffs. The amended complaint does not add any meaningful allegations establishing the false statements to the reporter were intentionally aimed at interfering with Plaintiffs' contractual relations. Therefore, Claim X will be dismissed without leave to amend.

Claim XI for public disclosure of private facts was previously dismissed because the disclosure of investigative activities was not "highly offensive to a reasonable person." More importantly, the claim was also dismissed because it was based on investigative activities that qualify as a matter of legitimate concern to the public. (Doc. 68 at 13). Both reasons remain valid. Thus, Claim XI will be dismissed without leave to

---

[2] Plaintiffs claim that even assuming absolute immunity might bar their claims for money damages, the immunity does not bar their request for injunctive relief under the Computer Fraud and Abuse Act ("CFAA"). In connection with their CFAA claims, Plaintiffs seek injunctive relief in the form of a prohibition on "Defendants from continuing to possess the . . . computer data in its entirety." (Doc. 73 at 8). However, pursuant to its regulatory power, FINRA was entitled to access and retain the computer data. Thus, even accepting that the request for injunctive relief is not barred by absolute immunity, it still fails because Plaintiffs' own allegations establish FINRA did not access the computers "without authorization." *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (CFAA requires access of computers "without authorization").

- 4 -

amend.

### B. Claims IX and XII

Claim IX for defamation and Claim XII for false light can be analyzed together. Both of these claims require allegations establishing Defendants published false information or innuendo regarding Plaintiffs. The theory in the amended complaint is that Defendants were providing true information to the reporter and, while doing so, Defendants were also providing false information. The false information included statements such as Plaintiffs "were involved in a 'pump and dump' scheme," Plaintiffs had allowed certain companies to trade in violation of Plaintiffs' own policies, and Plaintiffs had ignored "red flags" regarding certain trades. (Doc. 71 at 59). The problem with attributing these statements to Defendants is that, because they are false, they could have originated with anyone. In other words, unlike the leak of accurate information where there is good reason to believe the information must have originated from within a group of very limited individuals and entities, the false statements could have originated with anyone. In fact, the reporter could have simply manufactured such false information. Defendants stressed this point at oral argument when arguing Plaintiffs' claims cannot be deemed plausible when so many alternative sources are possible.

However, the fact that the false statements *might* have originated with unknown individuals or entities does not mean Defendants can avoid having to answer the complaint simply by pointing that out. When "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In light of the facts alleged in the complaint, it is plausible that the reporter was relying on the same source for the accurate and inaccurate information. And because it is plausible the accurate information originated with Defendants, it is plausible the inaccurate information did as well. This is, however, a very close call. Only by drawing all reasonable inferences in favor of Plaintiffs *and* giving Plaintiffs a very generous benefit of the doubt are the defamation and false light

claims barely plausible. Given that it is a stretch to allow these claims to proceed, the Court will very carefully circumscribe discovery to allow this case to quickly reach a resolution.

### C. Proper Parties

Having determined Plaintiffs are entitled to pursue their defamation and false light claims, there is a final issue regarding the appropriate plaintiffs to pursue these claims and the appropriate entity or individuals to defend them. In its previous order, the Court noted there was no clear connection between the claims alleged and all thirty plaintiffs. (Doc. 68 at 6 n.4). The amended complaint did not fix that flaw. In addition, the amended complaint does not include sufficient factual allegations implicating Scott M. Andersen as responsible for the defamation and false light claims. Given Plaintiffs' arguments during this case, it appears the only proper plaintiffs would be John and Justine Hurry and, perhaps, a small subset of their businesses. (Doc. 71 at 59). And given that Plaintiffs have no factual allegations identifying any particular FINRA employee as the likely source for the reporter, the only proper defendant may be FINRA itself. *See State, Dep't of Admin. v. Schallock*, 941 P.2d 1275, 1281 (Ariz. 1997) (recognizing employer can be vicariously liable for an intentional tort). Therefore, the parties will be directed to meet and confer regarding the proper plaintiffs and whether Mr. Andersen is a proper defendant on the remaining claims. If they can agree, the parties should file a stipulation to amend the complaint. If they cannot agree, the parties should explain their positions and Defendants should indicate whether they will seek judgment on the pleadings regarding certain plaintiffs and Mr. Andersen.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 75) is **GRANTED IN PART and DENIED IN PART**.

/

/

/

**IT IS FURTHER ORDERED** no later than **April 8, 2016**, the parties shall file a joint statement of no more than two pages each indicating their positions regarding the proper parties going forward.

Dated this 1st day of April, 2016.

Honorable Roslyn O. Silver
Senior United States District Judge